IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WESLEY ALLEN GREEN, 430148 | * |
| Plaintiff | * |
| v. | * Civil Action No. PX-17-513 |
| STEVEN MOYER | * |
| RICHARD DOVEY[1] | |
| OFFICER CLAPPER | * |
| Defendants | * |
| | ***** |

## **MEMORANDUM**

Pending is an unopposed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Secretary of Public Safety and Correctional Services Stephen T. Moyer, Warden Richard Dovey, and Correctional Officer Chad Clapper. ECF No. 12.[2] Upon review of the papers and exhibits filed, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Motion will be granted.

### **Background**

In his Complaint, Wesley Allen Green claims that on November 20, 2016, while confined at the Maryland Correctional Training Center (MCTC), he was "locked in a cage" and "maliciously" pepper sprayed directly in the eyes and face by Correctional Officer Clapper. Green further asserts that corrections personnel laughed at him and did not give him the opportunity to

---

[1] The Clerk shall amend the docket to reflect the correct spelling of the Warden's surname as Dovey.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on August 3, 2017, the Clerk of Court informed Green that Defendants had filed a dispositive motion; that he had seventeen days in which to file written oppositions to the motion; and that if Green failed to respond, the claim against Defendants could be dismissed without further notice. ECF No. 13. Green has not filed an opposition.

rinse properly the chemical agent off his body, and so was forced to use toilet water as a rinse. Green alleges that he was then thrown in a cell with nothing but his sweat pants, shoes, boxers and socks. ECF No. 1 at p. 3.

Green further claims that later in November and December of 2016, Clapper verbally threatened and harassed him. Green asserts that he informed Secretary Moyer in writing of Clapper's misconduct as well as Warden Dovey's failure to respond to Green's complaints regarding Clapper. ECF No. 1-2. As relief, Green seeks to enjoin Moyer and Dovey from ignoring his problems, as well as nominal, compensatory, and punitive damages.

Detective Sergeant Chris Burton of the Intelligence and Investigation Division (IID) investigated the November 20, 2016 incident involving Green having been pepper sprayed. In that investigation, Green indicated that he was escorted to the dispensary within five minutes of being pepper sprayed, and acknowledged that he [Green] had been drinking that night.

Relying on Burton's investigative report, Defendants maintain that on November 20, 2016, Clapper was conversing with Green, who was in a vestibule holding cage while his property was being inventoried pending his cell reassignment to administrative segregation. ECF No. 12-2, p. 6. Clapper reported that he could smell alcohol on Green. Clapper then questioned Green about whether he had been drinking. Green responded by pulling down his pants and waiving his penis at Clapper. Clapper ordered Green to pull his pants up. Green then spat at Clapper through the holding cage and Clapper applied one quick burst of pepper spray to Green's face to prevent Green from further attempting to spit at or assault Clapper. Green, now compliant, was handcuffed and escorted to the dispensary for evaluation. Green refused medical treatment; he would not allow Registered Nurse Nancy Cosner to touch him and would not answer direct questions posed to him during the medical evaluation. Green, agreeable to rinsing his face in the

2

sink under running water, pulled away when the nurse tried to dry his face. Photographs of Green appear to show redness to the facial area. ECF No. 12-2, pp. 6-7, 36-39. In his declaration, Clapper affirms that the information provided to the IID, as well as in a Use of Force Report, was true and accurate.[3] ECF No. 12-3.

## Standard of Review

**A.     Motion to Dismiss**

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.     Motion for Summary Judgment**

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[3]     Correctional Officer Clever, a witness to the November 20, 2016 incident, also provided a sworn statement to prison authorities. ECF No. 12-4.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## Analysis

### A. Liability of Officials

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Supervisory liability may attach under § 1983 if a plaintiff establishes: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices' "; and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Green seeks to hold Moyer and Dovey liable for their failure to take any action against Clapper in connection with Green's complaints. Green has not alleged that either Moyer or Dovey were personally involved in the alleged incidents. Nor has Green demonstrated that they knew in advance about Clapper's misconduct and failed to stop him. Accordingly, no claims are

properly brought against Moyer and Dovey, and so the Complaint as to them is dismissed.

  **B.**  **Excessive Force**

  Green essentially avers that Clapper used excessive force in pepper spraying him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Where "force was applied in a good-faith effort to maintain or restore discipline," and not to "maliciously and sadistically to cause harm," the force cannot be considered excessive as a matter of law. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining whether the force in this context was excessive, the Court considers the correctional need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive, and is rather just one factor in the excessive force determination. *Wilkens v. Gaddy*, 599 U.S. 34 (2010).

  The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F. Supp. 813, 818 (D. Md. 1978). Generally, the Eighth Amendment prohibition on cruel and unusual punishment mandates that such officials "use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 440 (4th Cir. 2008), quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). As with all excessive force claims, the Court must consider whether the manner in which a prison official used chemical agents demonstrates that prison official's sufficiently culpable state of mind. *Iko*, 535 F.3d at 238). *Cf., Furnace v. Sullivan,* 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer joined in); *Lawrence v. Bowersox,* 297 F.3d

727, 732 (8th Cir. 2002) (Eighth Amendment violation where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (officer's indiscriminate spraying of entire prison tier amounted constitutional violation). Use of chemical agents is reasonable when, as here, an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson,* 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

Green has not challenged the sufficiency of Defendants' evidence which indisputably shows that Clapper used a quick burst of spray to subdue after Green, who smelled of alcohol, had taken out his penis and spat on Clapper. Thereafter, Green complied, submitted to cuffing, and was escorted to the medical dispensary within five minutes where he received medical care.

Taking the facts in the light most favorable to Green, the incident does not rise to the level of an Eighth Amendment violation. Clapper used only an amount of force necessary to protect staff and restore order. Green was thereafter immediately removed from the vestibule cage, escorted to the medical department, and provided the opportunity to rinse off the spray. *See Williams, supra,* 77 F.3d at 763. The record "falls far short" of demonstrating "no plausible basis for [Clapper's] belief that this degree of force was necessary." *Whitley,* 475 U.S. at 323.

C. **Verbal Harassment**

Green's allegation that Clapper verbally threatened and harassed him is likewise unavailing. Verbal abuse of inmates, while disturbing and not to be condoned by any Court, does not amount to a constitutional deprivation. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D. N.C. 1990). To the extent Green bases any claim

7

solely on allegations of verbal harassment, the claim must fail.

## Conclusion

Defendants' motion is granted. A separate Order follows.

Date: 2/6/18 /S/
Paula Xinis
United States District Judge